Our first case today is 2019-50182, United States v. Uvaldo Ramirez-Cortinas. Thank you. May it please the Court, Elizabeth Berenger on behalf of the United States. The District Court here exceeded the scope of its authority when it dismissed the indictment in this case. Congress has limited the District Court's power to collaterally review a prior removal order under a very narrow set of circumstances once the alien is charged with illegal reentry, which include, one, that the proceedings at which the alien received his removal order improperly deprived him of judicial review, and two, being that a defect in the proceedings caused actual prejudice. I'm sorry to interrupt, but on the first point, the availability of judicial review, is it a problem that, as I understand it, Mr. Ramirez-Cortinas didn't receive his BIA opinion until after he was deported? Is that what the record shows? That's not what the record shows. The record shows that the BIA, consistent with the regulations, mailed a copy of the BIA decision on the day that it issued. It was mailed to the defendant's address, which is the detention facility in Houston, approximately just a little less than a week before he was removed. But the regulations also don't require that an alien exhaust all of his possible remedies under the law before that order is executed, and he still could have exercised his right to judicial review after he was removed. Nothing barred him from that. Had he already been deported by the time the letter was received at the facility? That's unknown from the record, but again, it is his burden to demonstrate that he was improperly deprived of the opportunity for judicial review. The record shows that the government followed, consistent with the regulations, its obligations in the proceedings that the BIA sent the letter to the defendant on the day that the BIA order was issued. But it doesn't matter if he got it at all. The case law suggests that it doesn't. It doesn't matter that he was necessarily apprised of that BIA decision. There isn't a case law, a case directly on point to that, but being improperly deprived of it, I mean, did he seek to do anything, you know, even after the removal? He's never sought any of the relief, either within the agency or through the court system. Is that correct? There is nothing that he has done until he was charged with illegal reentry in 2018 to attack this order. That's true. Counsel, does Pedroza Rocha and Perales Guzman resolve the first issue about the mootness? Absolutely. It's squarely on all fours with Pedroza Rocha. It's almost nearly identical in procedural posture that the government is appealing and the defendant was removed during the same process. So we put that issue to one side? Yes. Yes. Could we assume without – is a possible avenue of decision, assuming in this direction, is to assume without deciding that he was denied judicial review, just to pretermit that and go to the actual prejudice issue? The actual prejudice in the government's position is the easiest way to resolve this case without deciding whether he was improperly deprived. Excuse me, Your Honor. Actual prejudice, he can't win unless he shows actual prejudice. He can't in this case. He conceded. He admitted all factual allegations. He still to this point does not appear to contest that he was removable. Rights to relief, voluntary departures off the table because he was denied that as a matter of discretion. That doesn't seem to be even an issue. As far as the – I.J. made a finding that he was not eligible for asylum or withholding, and that under this court's de novo review does not to be – if it reviews the entire record, there is no well-founded fear on account of any sort of statutorily protected ground. He said he wasn't afraid to go to New Mexico. Yes, he said he wasn't afraid, and he had no knowledge of it. And even when asked – because I think his application may be a little bit more detailed, but then he disclaimed those statements in his application at the immigration hearing. And even on appeal, he didn't contest the immigration judge's finding that he hadn't met his burden of establishing it. He did challenge in a one line without any legal support that he'd been convicted of an aggravated felony but never challenged that factual conclusion, alternative finding, that he wasn't eligible on the statutory ground. Where did the district court go wrong? The district court – In your view. The judge – the court applied the wrong standard, and it seemed to apply a lesser standard of showing prejudice that if you just didn't get your full say in court. But unfortunately, that's not what the statute says. That's not what the case law says. The case law has said that the correct standard is he has to show a reasonable likelihood that but for any error, he wouldn't have been deported. And he can't show that on these facts. There's no evidentiary basis that would show any form of relief, even to this day. Even in 2018, the defendant, when he was arrested, and I draw the attention to page 295 of the record, asked if he has any fear of returning to Mexico. He says no. So not that that is a compelling factor, a crucial that this case rests on, but there's been nothing even after. He wouldn't help his asylum claim. Excuse me, what? He certainly wouldn't help his asylum claim. Yes, Your Honor. It cuts against any claim that he has any sort of fear, or any particular social group was never established in the record. Counsel, I have trouble seeing what was deficient in the process to begin with. They say that this was, you know, egregious lack of due process, and you, for some reason in your footnote, just preserved the issue. But it's not clear to me what there is that's a bad process. The judge kept continuing the hearing to let him try to get a lawyer, wanted to postpone at least twice, postponed different things and explained. I'm not clear on what the district court thought was bad in the process. Well, clearly the government disagreed with the district court below. But just on appeal for simplicity, just in light of the clear error on actual prejudice and deprivation of judicial review, the government just proceeded to appeal those two prongs. On your voluntary departure point is the argument that because it was discretionary, discretionary relief can never arise to a due process violation under our Ramos-Portillo and numerous other cases. So you can't show a due process violation of being deprived of discretionary relief. Is that your argument? Well, that is true. But our argument is that he can't show it was a reasonable likelihood that but for the defect he would have. Because the defect itself, which was the court identified as his claims were not considered, but for that defect he still wouldn't have received it as a matter of discretion based on his criminal history. And that's consistent with this court's decision in Mendoza-Mata. But being deprived of something discretionary is not actionable in this court. That's definitely what the government argued below, that any sort of his claim to relief. You didn't really focus a lot on that here. We thought this was the cleanest way. This was the cleanest way. And this court can even assume that there was a due process violation. Why should we if our precedent in Ramos-Portillo clearly says discretionary relief? And we have at least five other cases that say discretionary relief is not due process. No, Your Honor, withholding is not discretionary relief. Well, no, but withholding the voluntary departure. Voluntary departure is, yes. I'm talking about voluntary departure point. Yes, voluntary departure. That is true. It's a legislative grace of the sovereign, and he doesn't have a due process right in it. But, again, even if there was a due process violation, this defendant cannot show actual prejudice or that he was deprived of Article III court review. Do you have something further? No, Your Honor. I'll save the rest of my time for rebuttal. Good morning, Your Honors. May it please the court. Charlotte Herring on behalf of the appelee, Ubaldo Ramirez-Cortinez. We're here asking the court to affirm the district court's dismissal of the indictment because the district court correctly concluded that all prongs of the collateral attack requirements were met and the underlying deportation order was obtained in violation of due process. Do you agree that the mootness point is moot because of Pedroza-Roja? I do, Your Honor, yes. We concede that following this court's decision in Pedroza-Roja. I was going to address judicial review first and then actual prejudice, but I did quickly want to address a factual issue that came up about whether or not Mr. Ramirez received a copy of the BIA's decision. Page 610 of the record is the cover page of the BIA decision, which reflects it was received at the court facility on December 10, 2013, which would have been four months after Mr. Ramirez-Cortinez was deported from the country on August 2nd. Does it show when it was mailed? It does not show when it was mailed, Your Honor. There is no certificate of service attached to it. I believe the government supplemented the record with that document, which indicates they've looked for proof that it was mailed. I would also point the court to the record at pages 227 and 229 when Mr. Ramirez, in his notice of appeal, listed the address of the court facility and listed a different address for the detention facility where he was detained. So those were two physically—they're in a compound in Houston, but they are two physically separate addresses. At that time period, there was not a requirement for a certificate of service or anything. Regular mail notice was sufficient, wasn't it, under the regs? That is correct, Your Honor. The reason I think that fact is important is because I think it goes directly to the determination of whether he was deprived of judicial review. This court has really not done a deep dive into 1326D2 in the 32 years following the Mendoza-Lopez decision. Other circuits have had the opportunity to consider cases that have gone up just on the judicial review requirement and have interpreted Mendoza-Lopez to stand for the rule that where review is technically available, the court engages in a level of fact-finding to determine whether it was realistically possible. There are cases in the briefs—Sosa, Copeland, cited in my briefing out of the Second Circuit, and then the government cited a very helpful case for my position, Lopez, United States v. Lopez in their briefing written by now Justice Sotomayor, doing a quite extensive review of what judicial review means. And courts interpret that to mean that it must be realistically possible, not just theoretically possible. Were you representing this client in 2013? No, Your Honor, I was not. Are you in communication with him? I heard from him once following his deportation to Mexico. I have not heard from him since May of this year, and I don't have a working number. You don't know if he's in Mexico or if he's back here? I do not, Your Honor. Continuing on the point of judicial review, the starting point for that analysis is Mendoza-Lopez, and I think it's important for the court to remember that even in Mendoza-Lopez, habeas review was technically available for those respondents, but the Supreme Court nonetheless held they were deprived of judicial review because their waivers of appeal were not knowing and voluntary. The government argues that Mr. Ramirez wasn't deprived of judicial review because he could have theoretically filed a petition for review before this court. And so I want to go down that rabbit hole a little bit to talk about the realistic possibility of him filing a petition for review before this court because assuming hypothetically that he were, as the government suggests, that it was incumbent upon him to look for a way to continue his appellate options without even having been notified of the board's decision affirming the order of removal. This was a pro se man detained in a facility in Houston. So hypothetically he would have had to have access to some kind of law library or Internet and figure out the statute governing this court's ability to consider petitions of review. Perhaps hypothetically he could have stumbled on the existence of 8 U.S.C. 1252. If he'd read 8 U.S.C. 1252, he would have seen that the Real ID Act stripped this court of much of its jurisdiction on direct petitions for review. He might have read far enough down to get to 1252A2C, which strips this court of jurisdiction to consider a petition for review on an order of removal where the underlying ground for removal was removability on an aggravated felony. He would have thought, well, that's what the immigration judge told me. I was convicted of an aggravated felony. The face of the statute says I can't file a petition for review. Then he would have had to have hypothetically been able to do further research into this court's case law interpreting its jurisdiction under that statute. Do you believe that the district court is wrong on the merits of the aggravated felony point that the district court researched on its own? There's nothing complaining about that. Does that cause a problem for you? Your Honor, it's my two answers to that. My position on that is that that has been conceded by the government in its briefing because it's not challenged on appeal. A failure to point under this court's precedent, a failure to point to a clear error in the district court's analysis on a particular issue is the equivalent of waiver of that issue. So I don't see the court. Do you know whether that's before us, whether that's indeed an aggravated felony, a crime of moral turpitude, to be bail-jumping? I don't, Your Honor. I believe the government could have raised that but didn't. We're talking here about judicial review. Does it matter that he could have also sought to reopen? Your Honor, it doesn't. This court has analyzed the motion to reopen in its Villanueva Diaz decision, and in that context the court considers a motion to reopen to be an avenue of administrative review and it speaks to the administrative exhaustion prong, not to the judicial review prong. Importantly in this court's decision in Villanueva Diaz, it points out that the BIA actually loses jurisdiction as soon as the person is removed from the country by regulation. So the BIA would not have had jurisdiction to consider a motion to reopen. What about when he's back? When he is back, he could have theoretically filed a motion to reopen. People do that 20 years after the fact, often. Yes, Your Honor, but again, this court has never held that following deportation, a duty to administratively exhaust restarts once a person enters the country. Administrative exhaustion is analyzed up to the point the person is physically removed. Do you want to talk about prejudice or do you still want to talk about? I am happy to move on to prejudice, Your Honor. Yes. Do you agree that, let's say we agreed with everything you said about the availability of judicial review, we would still have to consider whether there was actual prejudice? That's correct, Your Honor. Both issues are before the court and the court could decide the case on either or both of those. Have you heard counsel opposites' argument on actual prejudice? Yes, Your Honor. So going to actual prejudice, I want to make clear what I believe the fundamental unfairness determination was that the district court correctly made. So in this case, the district court determined that Mr. Ramirez-Cortinez was deprived of due process or that fundamental unfairness occurred because he was deprived of the right to seek relief. I think that that is an important nuance in this court's prior case law, extensive case law in this area. This court has frequently held that there is no right to be advised, correctly or otherwise, of the right to seek relief. This court has held that there is no right to the ultimate relief. But this court has never held that there is no right to seek relief. But was he burdened to prevent him from seeking relief? Yes, Your Honor. He was burdened because the immigration judge erroneously determined he was statutorily ineligible for relief, which, in the district court's words, truncated his entire proceeding. The three components that this court requires in due process and has recognized repeatedly is that the person gets notice of the charges against them, a hearing in an administrative tribunal, and a fair opportunity to be heard. It wasn't a procedural error. If it was an error, and you say we're supposed to spot you that, if it was an error, it was a legal error. It wasn't the process that was not fair. It was that the court in the process, that's the appropriate process, made a legal error, that there was a certain technical reason why the relief was not available. That's not a bad process. It's a bad legal determination if it is a bad legal determination in the process. How is that a violation of due process? It is a legal error that deprived him of the fair opportunity to be heard. This court in Benitez Villafuerte said that that means an unimpeded opportunity to access a proceeding. So every time a judge makes an error that cuts off your right to relief, you've been denied due process? Your Honor, I believe that goes directly to the key distinguishing fact in this case from every other case that has reached this court in this area of law. In every other case, the issue has been a complaint about a failure to advise. The immigration judge didn't tell me. The ICE officer didn't tell me. Had I known, I would have been interested. The case has reached the court in this kind of speculative context where there's no evidence in the record that the person expressed any interest in this potential relief, but suddenly 10, 20 years later, it sounds like a good idea when they're facing a criminal charge. This case is different because this is not a right to advise case. Mr. Ramirez was actively seeking relief. He had filed a petition. He asked for that petition to be heard. He did everything. He availed himself of everything. He was seeking relief in what form? He was seeking relief in three forms, voluntary departure, asylum, and withholding of removal. And I did want to point out a key distinction in that that was raised in the government's presentation in one of this court's questions. Voluntary departure is a discretionary form of relief. There are certain prerequisites to apply for it, but once those prerequisites are met, the ultimate decision is left to the discretionary decision maker, the IJ. Does the person deserve voluntary departure? Withholding of removal is not a discretionary form of relief. To seek withholding of removal, if the person meets their burden, the burden is on the respondent, to show that they will face persecution on account of one of five statutorily enumerated grounds, there's no discretion. They must be granted. Since you say there's no discretion there, fine, let's accept that and go with that one. Benitez-Bueferte says, a showing of prejudice means there's a reasonable likelihood that but for the errors complained of, the defendant would not have been deported. So explain to me why Mr. Ramirez, why there's a reasonable likelihood that he would meet this nondiscretionary standard had there not been an error. Yes, Your Honor. Isn't that what you have to show? Yes, Your Honor. Tell me why. Exactly correct. There's a reasonable likelihood here because the district court, examining the record, looked at a proceeding that occurred with the judge walking onto the bench and saying, you're statutorily ineligible for the forms of relief you're seeking. So we assume that's an error. I'm going to order you deported. Do you want to appeal? My client says yes. He says, well then, we'll have a hearing. You have to have a record for appeal. So the reasonable likelihood in the district court's mind is the fact that we don't know what the immigration judge would have decided on the withholding of removal application had he believed he could have considered it. It's a very— It's not reasonable, though, is it? Because your client conceded that he wasn't afraid. He said, I may or may not. You have to make—there was no good reason to withhold removal. Your Honor, his application that he filed, which is in the record, is a 27-page, handwritten document where— How can you possibly— Your Honor, in that application, he raises several grounds for withholding of removal, that there is precedent that the district court considered that theoretically could have been granted. Family members who are union leaders, land-owning cattle farmers in South America, these types of withholding claims have been granted by other courts and upheld in the past. In this case, the judge told my client, I'm ordering you removed, and then said, we'll go on to have this hearing. He then—of course he equivocates. He's been told by an IJ that his answers don't matter, that none of this matters. No, it would seem like, no, I'm appealing, so I want to make the best record I can because I think I'm getting railroaded. I mean, it cuts the other way, that you would make the very best record on your behalf because you've just established that you're going to appeal this, what you believe is an injustice. You wouldn't make a half-hearted recanting record. I think that assumes a lot from a pro se respondent who is operating in a second language, Your Honor, to make that kind of calculation. I think what the record shows here is that the outcome of this proceeding, the decision to deny, was predetermined because the IJ engaged in perfunctory questioning because he felt he had to create a minimal record because he knew the man was going to appeal. But the problem is the answers to those questions that take away the reasonable probability. The court, what the district court considered and what this court is examining at this juncture is that record. And the district court tied his decision on the reasonable likelihood, I think, to the fact that his conclusion that we don't know, that this proceeding started on page, I believe it's four of the transcript of the proceeding. The first thing the immigration judge does is walk out and say you're not eligible. I'm ordering you deported. This court's case law recognizes deportation as equivalent in a person's mind to potentially exile or banishment. And so at that juncture where my client is being told that this hearing doesn't matter, there's much dialogue back and forth where during questioning the client, Mr. Ramirez, interrupts the immigration judge and says, but I don't have my documents. You're telling me my application's insufficient, but you're telling me that I have to go on. And the judge says, well, it may not be insufficient. And then two pages later the judge says, well, sir, you're right. It was insufficient. I mean, it's almost reeks of this sarcasm that you can read from the judge toward the client. And the district court, I believe, found that the reasonable likelihood standard was met because everything. We defer not. We do not defer to the district court's reading of this. We read it our own way de novo. It is de novo review, but the court reviews fact findings for clear error and has to have a firm and definite conviction that an error was made in order to reverse on a fact finding. So you believe the district court made fact findings, but the district court did not hear any testimony or anything. He just read the transcript the same way we would do, right? Your Honor, the district court did make a fact finding, several, but he did find that the reasonable likelihood standard had been met. Your Honor is correct that this case was extensively briefed below, and the briefing and the submissions to the court included the entire record, and then argument was heard on the motion to dismiss in front of the court as well. But there's no credibility determinations made by the court. That is correct. There's no credibility determination made. He was examining the transcript of the proceeding, which was the fullest representation of what happened below. Your Honor, I see that my time is almost up, but the Supreme Court has said that to interpret 1326D in a way that bars it completely from ever giving relief would be unconstitutional. There is a test that is applied. The district judge applied that test. He found that Mr. Ramirez passed that test based on an extensive record. I don't mean to interrupt you, but you may have said this while I was coughing and fighting my allergies, but do you agree that the district court appeared to apply the wrong prejudice standard? No, Your Honor. You don't agree with that? I don't agree with that. He said he had to consider whether he might have been deported. That doesn't create a problem? I mean, I understand you could win if we reviewed it and said, no, actually, under the right standard, there's still actual prejudice. But you think the district court actually applied the correct prejudice standard? Yes, Your Honor. The district court's decision reflects that he deemed the standard to be that Mr. Ramirez had to show there was a reasonable likelihood that, but for the error in the proceeding, he would not have been deported. Can you show me the record where the district court articulated that? Yes, Your Honor. On page 441 of the record, the district judge found that prejudice occurred because the proceeding truncated Mr. Ramirez's right to have his claim considered, and there was a reasonable likelihood that it could have been granted and he would not have been deported. Thank you. Thank you, Your Honor. Just briefly, Your Honor, I wanted to point out some points from the record. As far as the concern about the defendant's inability to sort of exercise his rights while detained in the detention facility from July through August of the following year, when he was eventually deported, he was able to appeal his parental rights being terminated in the Texas court, and I'm going to direct the court's attention to 142. So this is a somewhat savvy defendant. He speaks English fluently. He was able to fill out that application in English. I point the court to the record in 138 and 173 where he is directly asked about his English-speaking skills, so just in case there's any sort of confusion about that point. Did the government concede the bail jumping as the crime issue? The government did not concede that. But you didn't brief it to us? The government just does not believe that that is necessary for this court to reach this decision in light of the court's collateral review in this case. I mean this judge essentially acted as a court of equity, renewing de novo what had happened, the equitable considerations that the defense counsel cited as if he were the reviewing court, and that was not his role in 1320-60. We know that from Perales-Guzman, that the judge's role was very narrow, and all he had to do in this collateral attack and all he had the authority to do was determine whether 1320-60 plus actual prejudice had been determined. This is not a review of the immigration judge's sarcasm or the BIA, how carefully it reviewed. That would be what the defendant would raise to the Fifth Circuit in a petition for review, not when he comes back later and he's prosecuted for illegal reentry. That's not what Mendoza-Lopez in 1320-60 gives the court the subject matter jurisdiction to do. He is without authority to evaluate what he evaluated, whether he was really fully enabled to evaluate or put forth his applications to the best of his ability. No, this is a constitutional question. So what do you see as the opinion that you would seek from this court? This court's opinion on its most narrow grounds is that there was no actual prejudice. This defendant, but for any defect, even assuming there was a defect in this case, that there was no prejudice to the defendant because, but for the defect, he could not show that he was not going to be deported. There's nothing in the record. There's two cases, especially in Carnacion-Galvez, which is a Fifth Circuit case, and Reyes-Bonilla, just sort of talk about that there must be some sort of basis in the record, an evidentiary basis to support a defendant's claim for relief in these sort of collateral review proceedings. And that's not here. There's nothing in the record, even the application itself. There's no particular social group there, based on the Seventh Circuit case cited in the brief by the defense counsel, which is a FARC case where there was a murder and the family was fleeing from Colombia and they established these cattle farmers were a particular social group. You argued the social group point to us. Right. There's nothing in the record from which this court could find actual prejudice. It's really what it boils down to. This is a very narrow scope of review of the district court, and it was mistaken in its role here. And so this court just needs to clarify that this is not a court of equity, just as it did in Villanueva-Diez, as it has in the past. It's just a very narrow scope of review in the 1320-60 context. And if there are no further questions, I would ask for the case to be reversed. Thank you. We have your argument. This case is submitted.